IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:24-CR-70-E |
| DOLLY KAY PATTERSON (01) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Comes now, the United States, by and through the undersigned counsel, and responds to defendant Dolly Patterson's Motion to Suppress, Dkt. 21, and respectfully asks that the Motion be denied by the Court, and in support, shows as follows:

Overview

Patterson asks this Court to suppress statements she made to law enforcement officers, which she claims were unlawfully obtained in violation of *Miranda* and the Fifth Amendment. Her motion should be denied without the need for a suppression hearing because she does not plausibly allege that her incriminating statements were made during a custodial interrogation. *See United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (holding that defendant filing a motion to suppress must allege facts that are "sufficiently definite, specific, detailed, and non-conjectural, to enable the court to conclude that a substantial claim is presented").

Facts

The facts in this case are relatively straightforward. In April 2023, the chambers of a United States District Judge received a threatening statement over a "Contact Us"-type

system, which stated, "Tell this anti-abortion judge that he needs to watch his back -- and that of his kids -- the rest of his life!" Deputy U.S. Marshals (DUSMs) attempted to identify the sender. An initial lead—based on a user-generated email address listed in the communication (dkpat@yahoo.com)—led to an individual whom DUSMs assessed was likely not the sender of the threat. DUSMs then began to investigate other "dkpat" accounts, one of which appeared to belong to a user on a chat forum called Disqus who publicly made remarks indicating a hostility towards Texas and vitriolic statements consistent with the general political persuasion of the person who sent the threat. DUSMs determined that the individual who registered the Disqus account was Patterson through her iCloud account.

In an attempt to determine whether Patterson was the person who sent the threat to the Judge, in August 2024, DUSMs went to her apartment and knocked on her door. Initially, Patterson's adult son answered, then her husband. The DUSMs stated that they had a few questions to ask Patterson and would be on their way. Patterson then appeared in the entryway to her apartment and invited the agents to ask their questions. She then admitted to sending the communication to the Judge's chambers. She denied having any intention to harm the Judge or any member of the judiciary, stating, "No, those fucking people in Texas. . . . No I don't want to hurt anyone." Patterson said she did not believe that the communication would be perceived as a threat and that she "didn't think it would go this far." At no point did Patterson attempt to stop the interview, and the DUSMs left without ever restraining Patterson's movements or placing her in custody.

On October 9, 2024, a grand jury returned a two-count indictment charging Patterson with one violation each of 18 U.S.C. §§ 875(c) and 115(a)(1)(B). Patterson now brings this suppression motion, arguing that her incriminating statements during the interview with DUSMs were the result of an unconstitutional, un-*Mirandized* interrogation.

## Law and Analysis

"A *Miranda* warning, which may impact whether a statement was given voluntarily, is only required to be administered when a defendant is subject to a 'custodial interrogation.'" *United States v. Benegivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1969)). A suspect is only in custody "when placed under a formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with a formal arrest." *United States v. Michalik*, 5 F.4th 583, 588 (5th Cir. 2021) (internal quotations omitted). This inquiry is objective and "depends on the totality of the circumstances." *Id*. Courts weigh five factors in this inquiry:

(1) the length of the questioning;

(2) the location of the questioning;

(3) the accusatory, or non-accusatory nature of the questioning;

(4) the amount of restraint on the individual's physical movement; and

> (5) statements made by officers regarding the individual's freedom to move or leave.

*See United States v. Cavazos*, 668 F.3d 190 (5th Cir. 2012); *see also United States v. Coulter*, 41 F.4th 451, 458-62 (5th Cir. 2022). Though these factors are not dispositive, they anchor the inquiry. *See United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2014).

Here, all five factors favor the conclusion that Patterson was not in custody at the time she made her incriminating statements.[1] First, the length of the questioning was not long. In fact, Patterson appears to take umbrage with the questioning not being comprehensive enough. *See* Dkt. 21 at 20-21. Second, contrary to her assertion, there is no evidence that DUSMs entered Patterson's house. She states that "Federal agents assumedly in uniform and carrying weapons made their way inside" her house and "proceeded to interrogate her." That is not true. According to the report Patterson cites, Patterson came to the threshold of the door and invited the DUSMs to "go ahead and ask" their questions—meaning that the brief questioning would have been public to anyone passing by the apartment. They never entered her house at all. Third, there is no evidence

---

[1] Patterson also suggests that officers must have "reasonable suspicion" to conduct a knock and talk. While the government does not concede that reasonable suspicion did not exist, Patterson's statement of the law is not correct even if that were the case. Police are permitted to approach the front door of a house and seek to talk to the resident. *Florida v. Jardines*, 569 U.S. 1, 8 (2013). "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen may do.'" *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)). The Fifth Circuit has affirmed that a knock and talk is "a reasonable investigative tool when officers seek to gain an occupant's consent to search *or* when officers reasonably suspect criminal activity." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) (emphasis added). This does not mean that reasonable suspicion is *required*. The *Jones* Court itself noted that a knock and talk is reasonable "where the officers who approached the house were not convinced that criminal activity was taking place . . . ." *Id.* at 721. And if a knock and talk is reasonable to try to obtain consent to search, even in the absence of reasonable suspicion, there is no reason why it is not also valid as an attempt to obtain a statement by the occupant.

**Government's Response to Defendant's Motion to Suppress – Page 4**

that DUSMs engaged in accusatory questioning. Rather, according to the report cited by Patterson, DUSMs, after her invitation, asked her a few questions. After the interview, DUSMs left the premises without arresting her. Fourth, Patterson does not allege that she was ever restrained or told that she was not free to leave. Fifth, officers never told her that she could not stop the interview or leave; rather, she could have closed the front door and ended the interview at any time. Patterson has therefore failed to put forth any plausible evidence that her incriminating statements were custodial. And even if Patterson could satisfy the custodial analysis, she does not even suggest that "relevant environment" in which she was questioned "present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Coulter*, 41 F.4th at 462. Her argument thus fails for this additional reason. *Id.* at 462-63 (rejecting the argument that a defendant was "in custody" even though he was questioned after being handcuffed for officer safety.

Finally, Patterson argues that "the failure to record the interview or take a formal statement can also be grounds for suppression." But the 27-year-old district court case from another district that she cites does not support her novel assertion. Rather, *United States v. Gonzalez-DeLeon* simply makes a passing reference noting that an interview was video-taped. 32 F. Supp. 925 (W.D. Tex. 1998). As far as the government can tell, the court never even mentioned the recording as a factor in its Fifth Amendment analysis, let alone "emphasized the importance of recording custodial interrogations to protect individual rights" or implied that "the failure to record an interview can be grounds for

suppression." *Gonzalez-DeLeon* thus does not advance or help Patterson's argument.

Similarly, Patterson's citation to a draft of a restatement of child law does not support her sweeping contention that "failure to record an interrogation can create a presumption against the admissibility of the statements." To be sure, the lack of a recording may be relevant for Patterson at trial if she argues that she did not actually confess, but there is no basis in law to suggest that failure to record an interview somehow rises to a constitutional violation—let alone that it factors into the custodial analysis.

## Conclusion

Patterson was not in custody during her interview, law enforcement was not required to *Mirandize* her, and there is no evidence that her statements were involuntary. Her Motion to Suppress should be denied.

Respectfully submitted,

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

s/ *Matthew Weybrecht*
MATTHEW WEYBRECHT
Assistant United States Attorney
State Bar of Texas No. 24102642
Telephone: 817-252-5200
Fax: 817-252-5455
matthew.weybrecht@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2025, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney(s) of record.

*s/ Matthew Weybrecht*
MATTHEW WEYBRECHT
Assistant United States Attorney
